IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FOR SMITH DIVISION

KRISTINA STORMENT                                                              PLAINTIFF

      V.                              Civil No. 2:19-cv-02133-PKH-MEF

ANDREW M. SAUL[1], Commissioner,
Social Security Administration                                                 DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Kristina Storment, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

Plaintiff filed her applications for DIB and SSI on April 24, 2017, alleging an onset date of April 21, 2017, due to depression, night terrors, multiple personalities, obsessive compulsive disorder ("OCD"), learning disabilities, anxiety, paranoia, bipolar disorder, manic depression, post-traumatic stress disorder ("PTSD"), and fetal drug and alcohol syndrome.  (ECF No. 11, pp. 74-75, 219-234).  The Administrative Law Judge ("ALJ") held an administrative hearing on December 21, 2018.  (*Id*. at 33-71).  Plaintiff was present and represented by counsel.

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as the Commissioner of the Social Security Administration, replacing acting Commissioner, Nancy A. Berryhill.

Plaintiff was between 30 and 32 years old during the relevant period with past relevant work ("PRW") experience as a waitress, cook helper, and car hop. (*Id*. at 251).

On February 4, 2019, the ALJ found Plaintiff's spine disorder, personality disorder, neurodevelopmental disorder, and trauma related disorder to be severe impairments. (*Id*. at 18). He concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. As such, the ALJ found Plaintiff capable of performing sedentary work requiring only occasional climbing, balancing, crawling, kneeling, stooping, and crouching, and simple, routine, and repetitive tasks in a setting where the interpersonal contact is incidental to the work performed and the supervision is simple, direct, and concrete. (*Id*. at 19). With the assistance of a vocational expert, the ALJ determined Plaintiff could perform work as a compact assembler, fishing reel assembler, and ordinance checker. (*Id*. at 26).

Both parties have now filed appeal briefs (ECF Nos. 13, 15), and this matter is ready for Report and Recommendation.

## II. Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court

would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.     Discussion:

Plaintiff raises a single issue on appeal: whether the ALJ's RFC determination is supported by substantial evidence. RFC is the most a most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a claimant's RFC is a medical question and must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)); *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). However, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks*, 687 F.3d at 1092-93 (same).

As previously noted, the ALJ found Plaintiff could perform sedentary work involving occasional climbing, balancing, crawling, kneeling, stooping, and crouching, and requiring only simple, routine, and repetitive tasks in a setting where the interpersonal contact is incidental to the work performed and the supervision is simple, direct, and concrete. (ECF No. 11, p. 19). Plaintiff concedes that the ALJ correctly limited her to sedentary work, but insists she also requires a sit/stand at will option and manipulative restrictions due to her CTS and left cubital tunnel syndrome. She also takes issue with the cognitive and behavioral limitations contained in the RFC.

On January 4, 2018, chiropractor and nurse practitioner Lance Clouse began treating Plaintiff for complaints of severe low back pain and cramping, which she rated as a 7 on a 10-point scale. (*Id*. at 524-525). She exhibited paraspinal hypertonicity in the lower lumbar spine; a decreased intersegmental range of motion/joint fixation of the vertebral segments of the lower lumbar spine; pain and a decreased global lumbar range of motion with lumbar flexion, extension, lateral flexion, and rotation; palpatory tenderness of the lower vertebral segments and paraspinal muscle groups; muscle spasm and tender points in the piriformis and gluteal muscle groups; and, positive seated straight leg raise, Kemp's and Yeoman's tests. Dr. Clouse performed spinal and electrical stimulation and consistently directed Plaintiff to walk daily for 20 minutes, limit sitting to 1 to 2 hours of time, and apply ice to the affected area. He also prescribed Gabapentin, Ibuprofen, Tizanidine, and Tramadol.

Records indicate that Dr. Clouse continued to treat Plaintiff through October 15, 2018, with later treatment also including cryotherapy and a referral to pain management. (*Id*. at 484-488, 493-495, 500-506, 511-513, 516-520). And, in May 2018, Plaintiff began complaining of mid and upper back pain. (*Id*. at 500-506).

On February 7, 2018, an MRI of Plaintiff's lumbar spine revealed a large posterolateral focal disk herniation at the L4-L5 level with severe narrowing of the left neural foramen. (*Id*. at 448).

On February 19, 2018, she was evaluated by Dr. Brent Henderson at Pain Management of Oklahoma for complaints of lumbar pain radiating down both legs, which she stated was due to a work injury she sustained two years earlier. (*Id*. at 484-488, 489-491). Plaintiff reported improvement with medication, marijuana, and position changes. An exam revealed a reduced range of motion in the lumbar spine upon flexion, tenderness to palpation in the lumbar

5

paraspinals, a positive straight leg raise test bilaterally, an antalgic gait, and positive provocative tests bilaterally in the pelvis and SI joints.  Dr. Henderson diagnosed chronic pain syndrome due to a work injury, lumbar pain with lumbar radiculopathy, and bilateral hip joint pain.  He prescribed Percocet, Gabapentin, and Baclofen.  Dr. Henderson also discussed her marijuana use, reminded her it was illegal in Oklahoma, and ordered an MRI of her cervical spine.

On March 5, 2018, Plaintiff consulted with neurologist, Steve-Felix Belinga for complaints of dizziness following an abnormal balance test and brain scan.  (*Id*. at 558-561).  She reported a history of fetal alcohol syndrome, sinus issues, and a prior head injury.  Plaintiff exhibited hip flexor weakness, a very antalgic gait from her low back to her hips, and clear and brisk hyperreflexia suggestive of spinal cord trauma.  Dr. Belinga diagnosed dizziness, degenerative joint disease ("DJD") of the lumbar spine, DJD of the hips, and cervico-thoracic myelopathy.  Due to the large disc herniation evident on her lumbar MRI scan, he referred her for a neurosurgical consultation.

On March 16, 2018, MRIs of her cervical and thoracic spine revealed multilevel disk degeneration and minimal disk bulging at the C3-C4 levels without canal or foraminal stenosis and minimal levoscoliosis.  (*Id*. at 554-557).  Mild degenerative facet arthropathy was also noted at several levels, particularly on the left at the T8-9 and T9-10 levels.

On April 9, 2018, Plaintiff followed-up with Dr. Belinga, reporting improvement in her dizziness but no change with regard to her DJD.  (*Id*. at 548-550).  However, she indicated that physical therapy and a TENS unit were helping "a lot."  On exam, Dr. Belinga found her to be alert, attentive, and fully oriented with intact speech, normal cranial nerves, normal motor function, normal sensation, normal coordination, no vertigo, and a very antalgic gait from her low back to

hips.  After noting all her test results were very good and instructing her to continue physical therapy, Dr. Belinga concluded Plaintiff did not need surgery.

On April 9, 2018, nerve conduction studies revealed evidence of mild right CTS, mild sensory neuropathy in the bilateral lower extremities, and mild left cubital tunnel syndrome.  (*Id*. at 556-557).

On August 17, 2018, Plaintiff followed up with Nurse Jennifer Campbell at Pain Management of Oklahoma.  (*Id*. at 480-483).  She complained of continued lower back pain, which she rated as a 7-8 on a 10-point scale; muscle pain, weakness, and cramps; headaches; dizziness; vision changes; numbness; and, tingling.  Nurse Campbell documented a reduced range of motion in her cervical and lumbar spine; facet lumbar and SI joint tenderness bilaterally; and, an antalgic gait with the ability to walk only a few steps.  Nurse Campbell discontinued the Robaxin due to ineffectiveness, and Plaintiff reported she had stopped taking the Meloxicam for the same reason.  Accordingly, Nurse Campbell encouraged her to take the Meloxicam for a full month before passing judgment on its effectiveness and advised her to continue her other medications.  She also referred her to neurologist, Steve-Felix Belinga, for evaluation of her hips and cervical spine.

On October 16, 2018, Plaintiff followed-up with Nurse Jo-Anna Coppin-Lohr at the Pain Management of Oklahoma.  (*Id*. at 527-530).  Although she indicated the medication was managing her pain, she rated her current pain as a 10 on a 10-point scale.  An exam revealed a reduced range of motion in her cervical and lumbar spine, lumbar facet and SI joint tenderness bilaterally, and an antalgic gait.  Mentally, she was abrupt, and somewhat agitated with multiple psychological complaints, and was only minimally responsive to the recommended solutions.  Nurse Coppin-Lohr continued her medications.

Unfortunately, the record contains only two RFC assessments, both from non-examining sources. On June 14, 2017, Dr. Ronald Crow reviewed the record and concluded the evidence did not support a severe physical impairment. (*Id*. at 79-80). At that time, the transcript contained only records documenting Plaintiff's treatment for a deviated septum. On December 28, 2017, Dr. Brett Alberty affirmed the assessment of non-severe physical impairments. (*Id*. at 114-115). Both assessments, however, predate the evidence documenting Plaintiff's spinal and hand impairments.

While the ALJ's RFC assessment does account for some of the limitations associated with Plaintiff's spinal impairment, the ALJ failed to order a consultative orthopedic exam to fully develop the record regarding this impairment. In particular, the record shows that she suffers from a large posterolateral focal disk herniation at the L4-L5 level with severe narrowing of the left neural foramen. On her adult function report, Plaintiff reported the ability to sit for 20 minutes at one time. (*Id*. at 274-280). And, Dr. Clouse limited her to sitting for one to two hours. Contrary to the government's argument, on March 27, 2017, the definition of an acceptable medical source was expanded to include nurse practitioners. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 15132 (Mar. 27, 2017). And, sedentary work requires the ability to sit for approximately six hours during an eight-hour workday. SSR 83-10, 1983 WL 31251, *5 (1983). Therefore, if she requires a sit/stand at will option, this will erode the number of sedentary jobs available to her and require further testimony from a vocational expert.

The ALJ's RFC also makes no mention of Plaintiff's hand impairment or any resulting limitations, despite noting the results of her nerve conduction studies. (*Id*. at 22). Rather, he appears to have been overly concerned with Plaintiff's report that she used marijuana and the Xanax prescribed by another physician to self-medicate. (*Id*. at 25). The undersigned agrees that her marijuana use was not a material contributing factor, as she did not request early refills of the

Xanax and there is no evidence that she failed any of the urine drug screens once she began pain management. In fact, there are no records to indicate Plaintiff presented for any or her appointments under the influence of marijuana or over medicated. And, it appears she stopped self-medicating once she began pain management.

For these reasons, the undersigned finds that remand is necessary to allow the ALJ to obtain a consultative orthopedic exam, complete with an RFC assessment, to determine the full extent of Plaintiff's abilities and limitations.

The record also reveals Plaintiff was consistently treated for depression, anxiety, and PTSD during the relevant period. (*Id*. at 379-390, 398-405, 438-439, 451, 456-463, 467-469). And, IQ testing revealed a full-scale IQ of 70, indicative of borderline intellectual functioning. (*Id*. at 373-378). While the ALJ did find her personality disorder to be severe, he did not include any of these impairments as severe impairments. However, even the non-examining physicians agreed that Plaintiff suffered from these impairments and on January 3, 2018, Dr. Margaret Podkova concluded Plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, respond appropriately to changes in work setting. (*Id*. at 119-121). Therefore, on remand, the ALJ should also obtain mental RFC assessments from Dr. Walz and Plaintiff's treating mental health provider to provide reassurance he has accounted for all of her mental limitations in the RFC.

### IV. Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of June 2020.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE